IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID DARNELL NELSON, JR.,

                Plaintiff,

  v.

MATTHEW BURNS, ANDREW LARSON,
HSU MANAGER DOE, MICHAEL LUNDE,
and KYLE TRITT,

                Defendants.

OPINION and ORDER

16-cv-506-jdp

---

Pro se plaintiff and prisoner David Darnell Nelson, Jr. is proceeding on multiple claims under the Eighth Amendment related to his treatment at Waupun Correctional Institution (WCI): (1) defendant HSU Manager Doe failed to ensure that Nelson received his medication after he was transferred to WCI; (2) defendants Matthew Burns and Andrew Larson used excessive force on Nelson; and (3) defendants Burns, Larson, Kyle Tritt, and Michael Lunde subjected Nelson to an improper strip search after the use of force.

Both sides have moved for summary judgment on Nelson's claims related to the use of force and strip search. Dkt. 57 and Dkt. 69. I will deny Nelson's motion and grant defendants' motion. As to the excessive force claim, the only issue the parties raise is Larson's use of a taser. I conclude that Burns cannot be held liable because he was not involved in using the taser and there is no evidence that he could have stopped it. Larson is entitled to qualified immunity. Even if I assume that a reasonable jury could find that Larson's use of the taser was excessive, the law did not clearly establish that his actions violated the Eighth Amendment. As for the strip search claim, the undisputed facts show that defendants conducted the search for security reasons, not to harass or humiliate Nelson, so that claim fails as well.

As for Nelson's claim against the Doe defendant, I gave Nelson a December 4, 2018 deadline to amend his complaint to identify that defendant, Dkt. 68, but he failed to do that or ask for an extension of time. So I will dismiss that claim for Nelson's failure to prosecute.

Also before the court is Nelson's motion for leave to amend his complaint to add the Wisconsin Department of Corrections as a defendant. State agencies cannot be sued for constitutional violations, *Thomas v. Illinois*, 697 F.3d 612, 613–14 (7th Cir. 2012), and even if they could, Nelson hasn't shown or even alleged that the department violated his rights. So the court will deny this motion as futile. *See Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

UNDISPUTED FACTS

The following facts are undisputed except where noted.

All the events relevant to this case occurred on April 28, 2016, at Waupun Correctional Institution. At around 8:25 a.m., defendants Matthew Burns and Andrew Larson (both correctional officers) received notice of a "disruptive" prisoner being held in a strip cell.[1] When Burns and Larson arrived on the scene, Larson observed that the prisoner in the strip cell was Nelson and his hands were secured behind his back with handcuffs. Another officer informed Burns and Larson that Nelson was restrained inside the strip cell because he had become disruptive and started to threaten staff.

---

[1] The parties do not cite admissible evidence regarding the reasons for Nelson being disruptive. But Nelson alleged in his complaint that did not have his medication and began hallucinating. Dkt. 10, at 2. Nelson does not allege that any of the named defendants were responsible for ordering his medication or had the ability to get it for him.

Nelson was yelling and appeared to be agitated. Nelson screamed, "I want my god damn meds, you all mother fuckers are gonna have to beat me" and "you are going to have to gas me, electrocute me, I'm not going."[2]

When Nelson refused to calm down after a few minutes, Burns told Nelson that he would be placed in temporary lockup in the restrictive housing unit. Nelson yelled, "get the fuck away from me," and then spit at Burns, hitting "the left side of his face and shoulder area." *Id.*, ¶ 18. Larson "presented" his taser, activated the taser light, and centered it on Nelson's chest area, ordering Nelson to turn around to face the back of his cell. Nelson complied, but remained "agitated" and continued to make "incoherent statements." *Id.*, ¶ 19.

Larson ordered Nelson to back up to the cell door trap and remain facing the back of the cell. Instead of complying with the order, Nelson looked over his left shoulder, "made a sound like he was going to spit again," and "attempted" to turn his shoulders and head to the left "in an attempt to face Larson." *Id.*, ¶ 20. When Nelson failed to comply with a second order to face the back of the cell, Larson applied his taser to Nelson's back. In response, Nelson leaned against the wall and then "lowered himself" to the ground. *Id.*, ¶ 23.

When Nelson stood up again, Larson and other officers "secured" Nelson's left and right arms and "assisted" him to a kneeling position. *Id.*, ¶ 29. They placed restraints on his legs and a spit mask on his face.

---

[2] Defendants also allege that Nelson threatened to kill them multiple times throughout the incident, but Nelson denies that. Neither side says whether any part of the incident was recorded on video or audio.

3

Officers took Nelson to the restrictive housing unit, where he was secured with a tether strap to the door of a strip search cell. After assisting with the transport, Burns had no other contact with Nelson that day.

Under prison policy, prisoners are strip searched before being placed in the restrictive housing unit to ensure that they are not concealing contraband. When Larson informed Nelson that staff was going to conduct a strip search, Nelson began yelling again. And when staff readjusted the spit mask, Nelson tried to bite the officer's hand. Nelson also yelled, "You a trigger happy sexual assault ass nigga."

Defendant Michael Lunde (a correctional officer) conducted the strip search. Larson supervised, but did not directly participate. Defendant Kyle Tritt (another correctional officer) was also present.

Because Nelson was not complying with the strip search, Lunde used shears to cut off Nelson's clothing. First, Lunde checked Nelson's hands, feet and under arms to make sure he did not have any contraband. Second, Lunde used the back of his gloved and "bladed" hand to check underneath Nelson's scrotum, and then used the back of his hands to check between Nelson's buttocks, as required by policy. ("Bladed" means that Lunde's hand was flat and in a vertical position.)

Lunde did not find any contraband. After the strip search was finished, staff placed a "security kilt" on Nelson "for privacy." A nurse examined Nelson but found no injuries.

ANALYSIS

A. **Excessive force**

To prevail on an Eighth Amendment excessive force claim against a correctional officer, a prisoner must prove that the officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). The factors relevant to this determination include: (1) why force was needed; (2) how much force was used; (3) the extent of the injury inflicted; (4) whether the defendant perceived a threat to the safety of staff and prisoners; and (5) whether efforts were made to temper the severity of the force. *Whitley*, 475 U.S. at 321.

In his complaint, Nelson alleged that Burns and Larson used excessive force in various ways, including by forcing him to walk when he was in pain, twisting his wrist, and choking him. Dkt. 10, at 6. But the only issue he discusses in his summary judgment submission is the use of the taser, so I will focus on that issue and assume that he has abandoned the other aspects of this claim. Because only Larson used the taser and Nelson doesn't explain how Burns could have stopped Larson from using the taser, Burns is entitled to summary judgment on this claim. *See Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) (defendant officer could not be liable for excessive force because he did not have realistic opportunity to stop another officer from making a single use of a taser against the plaintiff).

As for Larson, some facts support Nelson's claim. For example, Nelson was handcuffed at the time Larson used his taser, which made Nelson less of a threat. *See Sallenger v. Oakes*, 473 F.3d 731, 741–42 (7th Cir. 2007). Other facts cut against Nelson. For example, he remained agitated and was refusing to comply with an order despite a previous warning that Larson would

use the taser. *See Forrest v. Prine*, 620 F.3d 739, 745 (7th Cir. 2010) (in concluding that use of taser was not excessive, noting that officers warned the plaintiff first). Other facts are unclear. For example, Nelson doesn't say how painful the taser was, which makes it more difficult to assess the merits of his claim. *Lewis*, 581 F.3d at 475 ("[P]ain . . . is the barometer by which we measure claims of excessive force.").

Other facts that Nelson raises have little or no relevance. First, he says that he suffers from "severe" medical conditions, so defendants should have taken him to the hospital after they used a taser on him. Dkt. 69, at 1. But he does not say that any of the defendants knew about his conditions at the time or that the taser actually caused any adverse effects to his health, so any problems he had related to his physical health are not probative of any of the factors relevant to determining whether Larson used excessive force.

Second, Nelson says that he was not in the "right state of mind," so he was "not responsible for his actions." *Id.* Nelson doesn't develop this point, but I assume he means to contend that Larson should have considered Nelson's mental health issues before using the taser. But it is *Larson's* state of mind that is relevant under the Eighth Amendment, not Nelson's. If Nelson was suffering from mental health issues at the time of the use of force, it may raise the question whether prison staff could have taken different steps to deescalate the situation before it got out of control, but it provides little insight into the question whether, at the time Larson employed the taser, he used force maliciously to harm Nelson rather than to restore order.

Because some facts support Nelson's claim, I will assume for the purpose of defendants' motion for summary judgment that a reasonable jury could find that Larson used excessive force against Nelson. But that is not the end of the discussion because Larson has raised a

qualified immunity defense. This means that I must grant defendants' summary judgment motion on the excessive force claim unless, under Nelson's version of the facts, Nelson shows that Larson violated his clearly established rights. *See Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015).

When determining whether the law is clearly established, courts must define the right at issue "with specificity," a point that the Supreme Court has emphasized "repeatedly" in excessive force cases. *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). This means that the court must consider whether case law would have made it clear under the particular circumstances of the case that the officer used unconstitutionally excessive force. *Id.* at 504.

Neither side cites any case law involving the use of a taser under similar circumstances. The court's own research did not uncover cases from the Supreme Court or Court of Appeals for the Seventh Circuit related to using a taser against someone trying to spit on an officer. Cases from other courts are not directly on point and do not show a clear trend.[3]

---

[3] *See Pashova v. Geist*, No. 09-cv-340 JD, 2012 WL 1074072, at *10 (N.D. Ind. Mar. 29, 2012) (use of taser not excessive under the Fourth Amendment when suspect was restrained but was spitting and attempting to bite officers; "the Officers would have perceived the threat posed by accidental ingestion of or exposure to her saliva as a significant one, given their concerns that she was a drug user"; the suspect "was also indisputably disruptive, uncooperative, and unresponsive"); *Brown v. Mundy*, No. CV411-264, 2011 WL 6176740, at *2 (S.D. Ga. Dec. 12, 2011), report and recommendation adopted, No. CV411-264, 2012 WL 12679 (S.D. Ga. Jan. 3, 2012) (use of taser not excessive under Fourth Amendment because suspect "was kicking officers and spitting in their faces"); *Stormer v. Koon*, No. 08cv813, 2010 WL 1257592, at *6-7 (S.D. Ohio Mar. 30, 2010) (the defendants' use of knee strikes and fist strikes were not excessive under the Fourteenth Amendment even though the plaintiff was handcuffed and lying down in cell when the plaintiff kicked at defendants and spit blood at them); *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008) (use of taser reasonable under the Fourth Amendment against a suspect who appeared to spit blood at an officer); *Bailey v. Cty. of Kittson*, No. CIV 07-1939 ADM/RLE, 2008 WL 906349, at * 22 (D. Minn. Mar. 31, 2008) (reasonable jury could find that officer used excessive force in violation of Fourth Amendment when he used taser on suspect who "threatened that he had Hepatitis C and he would bite or spit on anyone who approached him" because "there is no evidence that the Plaintiff actually did spit at any time . . . or make any other threatening gesture").

The absence of case law directly on point does not necessarily doom Nelson's claim. "A plaintiff may also overcome an officer's qualified immunity by showing that the conduct in question is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Dockery v. Blackburn*, 911 F.3d 458, 466–67 (7th Cir. 2018).

The parties do not cite any cases in which the Court of Appeals for the Seventh Circuit considered the constitutionality of the use of a taser under an Eighth Amendment standard. In my own research, I uncovered only one case. In *Lewis*, 518 F.3d at 479, the court refused to apply qualified immunity on an excessive force claim when the plaintiff alleged that correctional officers used a taser on him after he failed to immediately comply with an order to stand while he "was prone on his bed, weakened, and docile." The plaintiff also alleged that "he was told to rise one time and was not warned that a taser would be used against him if he failed to comply." *Id.*[4] In concluding that qualified immunity should not apply, the court relied on "the absence of any agitation or threat from [the plaintiff]; the short passage of time between [the officer's] order and the taser shot; [the officer's] single, unrepeated order; and the dearth of warnings regarding the consequences of [the plaintiff's] failure to comply." *Id.*

*Lewis* does not help Nelson. He was not lying down, "weakened," or "docile" when Larson employed the taser. And, unlike the officers in *Lewis*, Larson did warn Nelson first.

---

[4] *Lewis* involved a pretrial detainee rather than a convicted prisoner, so the detainee's claim was technically governed by the Fourteenth Amendment, but the court effectively applied an Eighth Amendment standard. 581 F.3d at 475 ("[W]e will not consider any safeguards the Fourteenth Amendment provides beyond those it shares with the Eighth Amendment.").

8

It does not appear that the court of appeals has decided any cases since *Lewis* involving the use of tasers against prisoners. But the court has decided several cases involving the use of tasers against suspects and arrestees. Although those cases are governed by the Fourth Amendment rather than the Eighth Amendment, they are nonetheless instructive. Because the standard for proving an Eighth Amendment excessive force claim is more demanding, cases rejecting liability under the Fourth Amendment would necessarily require the same conclusion under the Eighth Amendment.[5]

The most recent case is *Dockery*, which set forth "two guideposts" for assessing a qualified immunity defense in the context of a claim that the use of a taser violated the Fourth Amendment. 911 F.3d at 467. On one end, it is not constitutionally unreasonable to use a taser "against an actively resisting subject." *Id.* Examples of active resistance include kicking and flailing, declining to follow instructions while acting in a belligerent manner, and swatting an arresting officer's hands away while backpedaling. On the other end, an officer may not use a taser or other significant force against a "nonresisting or passively resisting" suspect. *Id.*

Although the facts of this case do not clearly fall at either of these two ends, they more closely resemble the examples of "active resistance." In *Dockery*, the court framed the question as whether the plaintiff had "submit[ted] to the officers' authority" at the time they used the taser. *Id.* at 468. In that case, the plaintiff had not done that because he "pointed an arm in

---

[5] The question under the Fourth Amendment is whether the use of force was objectively unreasonable; the plaintiff does not have to prove that the defendant acted with a particular mental state. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). But the relevant factors under the Fourth Amendment and Eighth Amendment overlap substantially. *Id.* ("In judging the reasonableness of any particular use of force, we consider factors such as the severity of the crime, whether the arrestee poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest or attempting to flee and evade arrest." (internal quotations omitted)).

[the defendant's] direction, attempted to stand up, and otherwise ignored the officers' commands to get on the ground." As another example, the *Dockery* court cited *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 487 (7th Cir. 2011), in which the court granted qualified immunity to officers who used pepper spray on a suspect who had "swatted" at an officer but was standing still and facing the officers at the time they sprayed him. The court reasoned that the plaintiff "ha[d] not submitted to the officer's authority, ha[d] not been taken into custody[,] and still arguably could [have] pose[d] a threat of flight or further resistance." *Id.*

In this case, Nelson had not "submitted to authority" when Larson discharged the taser. Although Nelson was handcuffed, he was not defenseless. His legs and feet were not restrained and he was standing up, refusing to comply with an order, and making signals that he was going to spit at Larson. Even if I assume that spitting in itself is not adequate grounds for employing a taser, it is evidence that Nelson would continue to resist until he was subdued. *Cf. Husnik v. Engles*, 495 F. App'x 719, 721 (7th Cir. 2012) (use of a taser on handcuffed pretrial detainee not excessive when officer had warned detainee but detainee continued to "thrash his legs").

The bottom line is that current law does not clearly establish that using a taser under the circumstances of this case would be unconstitutional. If anything, case law supports a view that Larson acted within the bounds of the Eighth Amendment. So both Burns and Larson are entitled to summary judgment on this claim.

**B. Strip search**

In determining the constitutionality of a strip search, the question is whether the officers had a legitimate penological reason for both the search and its scope and did not intend to humiliate or harass the prisoner. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015); *Vasquez*

*v. Raemisch*, 480 F. Supp. 2d 1120, 1131–32 (W.D. Wis. 2007). In this case, the facts show that neither the search nor its scope was improper.

As for the decision to search Nelson, it is undisputed that he was searched for contraband, as required by a policy that applies to all prisoners who are transferred to the restrictive housing unit. Because detecting contraband is a legitimate penological interest, the decision to search Nelson did not violate the Eighth Amendment. *See Peckham v. Wisconsin Dept. of Corr.*, 141 F.3d 694, 695 (7th Cir. 1998) (upholding routine strip searches of prisoner, including those that occur "whenever prison officials undertake a general search of a cell block"); *Caldwell v. Elizabeth*, No. 00-1319, 2006 WL 463545, at *8 (C.D. Ill. Feb. 24, 2006) (upholding procedure requiring strip searches of prisoners taken to segregation, to determine whether the inmate has contraband on his person).

As for the scope of the search, Nelson does not allege that the search was overly intrusive or that defendants conducted the search in a harassing manner. Instead, Nelson criticizes defendants because "they never ask[ed] [Nelson] to strip [him]self." Dkt. 69, at 2. But it is undisputed that Nelson was still agitated when they conducted the search and tried to bite the officers when they adjusted his spit mask. Under those circumstances, no reasonable jury could find that defendants conducted a staff-assisted search to harass and humiliate Nelson rather than for security reasons. *See Cherry v. Frank*, 2003 WL 23205817, at *11 (W.D. Wis. Dec. 4, 2003) (prisoner's initial resistance to search required staff to handcuff him during search, making visual inspection impossible). So defendants are entitled to summary judgment on this claim as well.

ORDER

IT IS ORDERED that:

1. Plaintiff David Darnell Nelson, Jr.'s motion for leave to amend his complaint, Dkt. 72, is DENIED.

2. Nelson's motion for summary judgment, Dkt. 69, is DENIED.

3. Nelson's claim against "HSU Manager Doe" is DISMISSED for failure to prosecute.

4. The motion for summary judgment filed by defendants Matthew Burns, Andrew Larson, Michael Lund, and Kyle Tritt, Dkt. 57, is GRANTED.

5. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered February 14, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge